FILED

2006 Jun-01  AM 11:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

|  |  |  |
|---|---|---|
| **MARIE ANTOINETTE LINDSEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CV 04-B-2758-NE** |
| | ) | |
| **HUBBARD & DRAKE GENERAL MECHANICAL CONTRACTORS, INC.,** | ) ) ) | |
| | ) | |
| **Defendant.** | ) | |

### MEMORANDUM OPINION

This case is presently pending before the court on defendant's Motion for Summary Judgment. (Doc. 15.) Plaintiff Marie Antoinette Lindsey has sued defendant Hubbard & Drake Mechanical Contractors, Inc., alleging that defendant discriminated against her on the basis of her gender in violation of federal law. Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Motion for Summary Judgment, (doc. 15), is due to be granted.

### I. SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see*

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and show that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).   A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Id.* at 249.   Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and, therefore, evidence favoring the non-moving party is to be believed and all justifiable inferences are to be drawn in her favor. *See id.* at 255.   Nevertheless, the non-moving party need not be given the benefit of every inference but only of every ***reasonable*** inference.  *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## II. <u>STATEMENT OF FACTS</u>

In 2001, plaintiff worked as a welder for Omega Multinational, a subcontractor to defendant on the Cargill project.  (Doc. 16, Ex. C at 39-40; *id*., Ex. D at 30-32, 47-48.) While on the Cargill job, plaintiff worked on a heat exchanger, a job which did not require

2

welding, and she fixed a stainless tank, a job which did require welding.  (*Id*., Ex. C at 42; *id*, Ex. D at  31-33.)[1]

Rob Cutrer, defendant's foreman on the Cargill project, dismissed plaintiff and her male co-worker, Mickey Hughes, because Cutrer believed Hughes and plaintiff had taken too long of a break.  (*Id*., Ex. C at 43-44; *id*., Ex. E at 12-13, 18-19; *id*., Ex. G at 13-14.)  At that time, other Omega workers were dismissed from the job cite as well.  (*Id*., Ex. D at 57-58; *id*, Ex. E at 13; *id*., Ex. F at 22.)  Cutrer told Chris Howard, defendant's Project Manager at the time, that he wanted the Omega employees "off the job" because the quality of their welds was "terrible," "they [had] safety issues," and "productivity [was] terrible."  (*Id*., Ex. E at 17; *id*., Ex. D at 17, 21, 33.)  Howard specifically testified that plaintiff's welding was of poor quality and it took her longer than expected to make a weld.  (*Id*., ex. D at 33.)  Cutrer testified that he told plaintiff she needed to improve her welds; Howard testified that he was present for this conversation.  (*Id*., Ex. D at 39-41; *id*., Ex. E at 21.)  Plaintiff testified

_____

[1]Plaintiff contends that there is a disputed issue of fact as to whether plaintiff performed any welding on the Cargill project.  Howard described two phases of the Cargill project: (1) "changing out the heads on a heat exchanger" and (1) a "stainless steel piping job."  (Doc. 16, Ex. D at 31.)  He testified that the heat exchanger project did not involve welding.  (*Id*., ex. D at 33.)  He also testified, as did plaintiff, that the stainless steel project required welding.  (*Id*., Ex. D at 33-34; *id*., Ex. C at 41-42.)  Plaintiff testified that she did not "do any pipe on [the Cargill] job; however, she clearly testified that she "was a welder" and that she "fixed a [stainless steel] tank" with welding.  (*Id*., Ex. C at 41-42.)  As discussed below, the court finds that plaintiff welded on the Cargill project and that the issue is not disputed.

that she did not remember whether or not anyone had questioned her job performance on the Cargill project. (*Id.*, Ex. C at 45-46.)

Plaintiff submitted applications for employment with defendant on March 19, 2003, August 13, 2003, and December 11, 2003. (*Id.*, Exs. A and B; doc. 21, Ex. K.) Plaintiff was not hired by defendant. (Doc. 16, Ex. C at 82, 88; *id.*, Ex. H at 27.) On her applications plaintiff stated that she was certified in the following types of welding: pipe, structural, MIG, TIG, stick, stainless, alloys, aluminum, and plastics. (*Id.*, Exs. A and B; doc. 21, Ex. K.)

In 2003, Ivan Armor, defendant's Superintendent, was in charge of hiring. (Doc. 16, Ex. D at 22-23.) He reported to Howard. (*Id.* at 23.) Armor received plaintiff's applications and he asked Howard if he knew plaintiff. (*Id.*, Ex. H at 19, 25.)[2] Armor testified that Howard told him that "he had [seen] her work, the quality of her work, and that she was not what [defendant was] looking for." (*Id.* at 27; *see also id.*, Ex. D at 63-64.)[3] Armor considered this to be the end of plaintiff's application process. (*Id.*, Ex. H at 27.)

_____

[2]Armor testified that plaintiff appeared to be qualified based on her application. (*See* doc. 16, Ex. H at 25.)

[3]Howard testified:

> Ivan Armor had an application for Mrs. Lindsey. He asked if I knew her and I said yes, I did. And he asked me about her welding performance, if it was quality, and I said no, the project that she worked on for us, there were poor welds and it was very slow, that that was not the type of welder that we needed in the field for us.

(Doc. 16, Ex. D at 63-64.)

4

Armor was pretty sure that defendant was looking for welders in August and December 2003.  (*Id*. at 41.) Jason McNatt, Roger Walker, and John L. Burt, male welders, were hired in September 2003.  (Pls. Exs. C, D, and E.)  McNatt and Joey Ward were hired in December 2003.  (Pls. Exs. C and G.)

Six days after she filed her December 2003 application, plaintiff filed a charge of sex discrimination with the EEOC.  (Doc. 1, Ex. A; doc. 16, Ex. B.)   In her EEOC Charge, plaintiff alleged:

> Since 1998 and as recently as December 12, 2003, I have repeatedly applied for employment with Respondent as a welder.  Although I am certified and extremely well qualified to perform all of the duties and responsibilities of this job, Respondent continues to refuse to hire me.  Instead, Respondent hires less qualified males to fill its vacant welding positions.
>
> Upon information and belief, Respondent is denying me employment because of my gender, in violation of Title VII of the 1964 Civil Rights Act, as amended.

(Doc. 1, Ex. A.)

### III.  DISCUSSION

Plaintiff alleges that defendant refused to hire her as a welder, despite her qualifications, due to her gender.  (Doc. 1 ¶ 8.)  To establish a prima facie case of discrimination with regard to defendant's failure to hire, plaintiff must show:

> (i) [she] belonged to a protected class; (ii) [she] was qualified for and applied for a position that the employer was seeking to fill; (iii) despite qualifications, [she] was rejected; and (iv) the position was filled with an individual outside the protected class.

*Vessels v. Atlanta Independent School System*, 408 F.3d 763, 768 (11th Cir. 2005)(citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

Defendant contends that plaintiff cannot establish that she was qualified for the position of welder based on Howard's opinion of her poor welding performance on the Cargill project.  Plaintiff disputes defendant's contentions regarding her "qualifications."  The court notes the record contains evidence that plaintiff is an experienced welder.  The court will assume, without deciding, that plaintiff was qualified for the position of welder for purposes of the prima facie case.  Evidence of plaintiff's poor performance on the Cargill job will be considered "when a court evaluates the pretextual nature of [defendant's] proffered nondiscriminatory reasons for [not hiring plaintiff.]"  *Vessels v. Atlanta Independent School System*, 408 F.3d 763, 769 (11th Cir. 2005)("[T]o demonstrate that he was qualified for the position, a Title VII plaintiff need only show that he or she satisfied an employer's objective qualifications.  The employer may then introduce its subjective evaluations of the plaintiff at the later stages of the *McDonnell Douglas* framework."); *see also Damon v. Fleming Supermarkets Of Florida, Inc.*, 196 F.3d 1354, 1360 (11th Cir. 1999)(citing *Clark v. Coats & Clark,* 990 F.2d 1217, 1227 (11th Cir. 1993); *Young v. General Foods Corp.*, 840 F.2d 825, 830 n.3 (11th Cir. 1988)).

Defendant also argues that plaintiff "cannot present any evidence as to who was hired after she submitted her two applications, whether that person was a member of her protected class, or what their qualifications were."  (Doc. 15 at 12 n.5.)  It contends, "Because of the

turnover of personnel and the project-related nature of the work, there was no single position for which [plaintiff] applied which was ever filled by any particular person." (Doc. 21 at 7.) The court disagrees.

Plaintiff has presented evidence that defendant hired male welders after she filed her applications in August and September for a welder position. As plaintiff did not specify a particular welding position for which she was applying, the court finds that evidence that defendant hired male welders during this time period is sufficient to show that defendant filled a vacant welding position with a welder outside the protected class. *See Hawkins v. Ceco Corp.*, 883 F.2d 977, 983-84 (11th Cir. 1989).[4]

Therefore, for the reasons set forth above, the court finds that plaintiff has established a prima facie case of gender discrimination.

Because plaintiff has established a prima facie case of discrimination, the burden shifts to defendant to articulate its reason for not hiring plaintiff.

> Once the plaintiff has made out the elements of the prima facie case, the burden shifts to the employer to articulate a non-discriminatory basis for its employment action. If the employer meets this burden, the inference of discrimination drops out of the case entirely, and the plaintiff has the opportunity to show by a preponderance of the evidence that the proffered reasons were pretextual. Where the plaintiff succeeds in discrediting the employer's proffered reasons, the trier of fact may conclude that the employer intentionally discriminated.

---

[4]The court notes that is no evidence that, during the relevant time period, defendant hired any welder ***within*** the protected class.

*Vessels*, 408 F.3d at 767-68 (citing *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 148 (2000); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511 (1993); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

Defendant contends that plaintiff was not hired based on Howard and Cutrer's assessment of prior work performance; it contends:

> . . . Chris Howard, the project manager at Cargill, and Rob Cutrer, the foreman over [Plaintiff], directly observed her working, and described in great detail the problems that they experienced with [plaintiff] and her crew from the first day on the job involving quality, productivity, and safety.  This included the break incident, the poor quality of her welds, and her slowness performing the work.

(Doc. 15 at 13 [internal citations and footnote omitted].)  This reason is sufficient to meet defendant's burden.  Therefore, to survive defendant's Motion for Summary Judgment, plaintiff must show a disputed issue of fact as to whether defendant's articulated reason is a pretext for unlawful discrimination.

Plaintiff may establish that defendant's articulated reason is a pretext for unlawful discrimination "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Carter v. City of Miami*, 870 F.2d 578, 584 (11th Cir. 1989)(quoting *Goldstein v. Manhattan Industries*, 758 F.2d 1435, 1445 (11th Cir. 1985)(citing *Burdine*, 450 U.S. at 256), *cert. denied* 474 U.S. 1005 (1985)).  If plaintiff chooses to establish pretext by showing that defendant's articulated reason is unworthy of credence, she must attack that reason "head on and rebut it." *Chapman v. AI Transport*, 229

8

F.3d 1012, 1030 (11th Cir. 2000).  That is, plaintiff must offer evidence that "casts sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable fact finder to conclude that the employer's proffered 'legitimate reasons were not what actually motivated its conduct.'" *Combs*, 106 F.3d at 1538 (quoting *Cooper-Houston v. Southern Ry. Co.*, 37 F.3d 603, 605 (11th Cir. 1994)).

Plaintiff must show substantial evidence of a disputed issue of fact as to whether Howard told Armor not to hire plaintiff based on his observations of her prior work performance, which he found lacking, during her previous work on the Cargill project.  The Eleventh Circuit has held:

> [W]e must be careful not to allow Title VII plaintiffs simply to litigate whether they are, in fact, good employees.  The factual issue to be resolved is not the wisdom or accuracy of [the employer's] conclusion that [plaintiff] was an unsatisfactory employee.  We are not interested in whether the conclusion is a ***correct*** one, but whether it is an ***honest*** one.  Like all Title VII cases where pretext is an issue, ***the question the factfinder must answer is whether [the employer's] proffered reasons were a coverup for a discriminatory decision***.  We are not in the business of adjudging whether employment decisions are prudent or fair.  Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision.

*Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002)(internal citations and quotations omitted; emphasis added).

Plaintiff contends that defendant's articulated reason is unworthy of credence because, "the ultimate dispute of fact here is not about whether or not Lindsey is a quality welder, but whether she performed ***any*** welding at all."  (Doc. 19 at 20-21 [emphasis added].)  She contends that defendant's articulated reason for not hiring her is unworthy of credence

because she did not weld on the Cargill project and, therefore, Howard could not have seen her weld and formed an opinion of her welding – favorable or unfavorable.  (Doc. 15 at 23 ["It is thoroughly disputed that [defendant] could have 'believed' that [plaintiff's] work was poor because no one from [defendant] could have observed her work."].)  Despite plaintiff's assertions in her brief that she did not weld on the Cargill project, in her deposition she testified unequivocally that she had welded on a stainless steel tank on the Cargill project. This testimony is consistent with Howard's testimony regarding the welding he observed. Plaintiff testified:

> Q.  What were you doing on [the Cargill] job?
>
> A.  I was a welder.
>
> . . .
>
> Q.  Were you altering an existing line?
>
> A.  No, sir.  I didn't do any pipe on that job.
>
> Q.  On the Cargill job?
>
> A.  Yes, sir.
>
> Q.  What did you do on that job?
>
> A.  *I was a welder on that job.  I fixed a tank in the back* –
>
> Q.  Fixed a tank?
>
> A.  Yes, *I had to repair a tank, a stainless tank*.

(Doc. 16, Ex. C at 41-42 [emphasis added].)

Howard testified:

Q.  What was the project that [plaintiff] was working on?

A.  As I recall, they worked on two projects.

Q.  Do you recall what they were?

A.  Yes, sir.  One project was changing out the heads on a heat exchanger and ***the other project was a stainless steel piping job***.

Q.  And when you say "they," who do you mean?

A.  Her crew.

. . .

Q.  What did you observe?

A.  Her welding.

. . .

Q.  What do you recall about her welding?

A.  That it was poor quality and it – her timing – it took a long time for her to make her welds.

Q.  What specifically do you recall about her job assignments and her welding?

A.  On the heat exchanger job, there was no welding involved.  That was simply a mechanical-type job, just moving parts.   On the ***stainless steel project***, they had a fixed time frame on the shutdown to be done and that project was falling terribly behind schedule.  And as the welder, I recall her not being able to get the welds done in time.

11

(*Id*., Ex. D at 31-33 [emphasis added].)   Later in his deposition, Howard testified that plaintiff was working on a project to "[r]eroute pipe at T-26 sack ***tank***."  (*Id*. at 92 [emphasis added].)

Plaintiff bases her pretext argument ***solely*** on her contention she did not weld on the Cargill project.  Based on the deposition testimony of plaintiff and Howard, the court finds no disputed issue of fact as to whether plaintiff welded on the Cargill project.  Therefore, the court finds that plaintiff has not presented sufficient evidence to create a question of fact as to whether defendant's articulated reason for not hiring her – her performance on the Cargill job – is unworthy of credence, or other substantial evidence that she was not hired because of her gender.  Defendant's Motion for Summary Judgment will be granted.

## CONCLUSION

For the foregoing reasons, the court is of the opinion that there are no material facts in dispute and defendant is entitled to judgment as a matter of law.  An Order granting defendant's Motion for Summary Judgment, (doc. 15), and dismissing plaintiff's claim will be entered contemporaneously with this Memorandum Opinion.

**DONE**, this 31st day of May, 2006.

*Sharon Lovelace Blackburn*
SHARON  LOVELACE  BLACKBURN
UNITED STATES DISTRICT JUDGE